1                                                              'O'

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11

12   HENKELS AND McCOY, Inc. et        CV 21-07210-RSWL-RAOx
     al.,
13                                      **ORDER re: Plaintiff's**
                  Plaintiff,            **Motion for Partial Summary**
14                                      **Judgment [21]**
         v.
15

16   UNITED SPECIALTY INSURANCE
     COMPANY,
17
                  Defendants.
18

19

20       Plaintiff Henkels and McCoy, Inc. ("Plaintiff")

21   initiated this Action against Defendant United Specialty

22   Insurance Company ("Defendant") for breach of contract,

23   declaratory relief, and breach of the duty of good faith

24   and fair dealing.  Compl., ECF No. 1.  Currently before

25   the Court is Plaintiff's Motion for Partial Summary

26   Judgment [21] (the "Motion").  In the Motion, Plaintiff

27   requests the Court determine as a matter of law four

28   issues: 1) as of September 8, 2017, Defendant owed

                                1

Plaintiff a duty to defend in an underlying personal injury action; 2) Defendant still owed Plaintiff a duty to defend at the time of a May 14, 2021 settlement in the personal injury action; 3) Defendant breached its insurance contract by not defending Plaintiff; and 4) Defendant's breach of the insurance contract was a breach of its duty of good faith and fair dealing. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS**: the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment.

## I.   BACKGROUND

**A.   Factual Background**

    1.   <u>The Underlying Personal Injury Action</u>

In a prior action in 2017, Jeremy M. Stage and Dennis Garr ("Stage plaintiffs") filed a complaint against Southern California Edison Company ("SCE") for contributing to Stage plaintiffs' injuries in a car accident. <u>See generally</u> Pl.'s Req. for Judicial Notice ("Pl.'s RJN"), Ex. B-1, ECF No. 21-2. Stage plaintiffs' accident occurred late at night at the intersection of Walnut Grove and Broadway in the City of San Gabriel. <u>Id.</u> The Stage plaintiffs' complaint alleged in part that the injury occurred due to a lack of powered traffic control signals, powered streetlights, set up cones, blockage, signage, and warnings at the intersection. <u>Id.</u>

SCE hired Plaintiff to perform electrical power

pole replacement near where the Stage plaintiffs'
accident occurred and on the day the accident occurred.
See generally Pl.'s RJN, Ex. B-3.  SCE filed a cross-
complaint against Plaintiff in the Stage plaintiffs'
lawsuit.  Id.  Plaintiff then filed a cross-complaint
against California Traffic Control Services ("CTC")
alleging that CTC partly caused Stage plaintiffs'
injuries.  See generally Pl.'s RJN, Ex. B-2.[1]

    2.  CTC's Contract with Plaintiff

Plaintiff hired CTC through a master subcontract
agreement (the "MSA") to perform traffic control service
in connection with the power pole replacement project.
Pl.'s Statement of Uncontroverted Facts ("Pl.'s SUF")
No. 1, ECF No. 21-3.

The MSA required CTC to obtain an insurance policy
that named Plaintiff as an additional insured.  Id. No.
3.  CTC bought an insurance policy from Defendant.  Id.
No. 4.  Plaintiff was identified as an additional
insured in the policy.  Id. No. 6.  On the condition
that CTC was partly at fault, Defendant agreed to pay
the sums Plaintiff became legally obligated to pay and
to defend Plaintiff from a suit seeking bodily injury
damages.  See generally Morales Decl., Ex. G, ECF No.
21-4.  Noticeably, Plaintiff is only insured under the
policy with respect to bodily injuries caused in whole

---

[1] CTC was later substituted into the action in place of "DOE
2 defendant."  Pl.'s SUF No. 12.

3

1  or in part by CTC in the performance of CTC's ongoing
2  operations for Plaintiff.  Pl.'s SUF No. 6.  Defendant
3  agreed to insure Plaintiff on a primary and non-
4  contributory basis.  Id. No. 8.

5      3.  <u>Superior Court Orders and Negotiated Payment</u>

6      In a 2020 order, a superior court stated that the
7  traffic control services that CTC provided on the night
8  of the Stage plaintiffs' accident were subject to the
9  MSA terms.  Id. No. 2.  The 2020 order also stated that
10  CTC did not owe Plaintiff a defense as of the September
11  2017 tender because Plaintiff dismissed and then filed a
12  new cross-complaint against CTC after the tender
13  occurred.  <u>See generally</u> Pl.'s RJN, Ex. B-5.  After the
14  2020 order, CTC negotiated payment of Plaintiff's
15  defense fees in accordance with the scope of the
16  superior court's order.  Def's Statement of
17  Uncontroverted Facts ("Def's SUF") No. 25, ECF No. 22-1.

18      4.  <u>Plaintiff's First Tender to Defendant</u>

19      On September 8, 2017, tender was made to Defendant
20  for the defense and indemnity of Plaintiff.  Pl.'s SUF
21  No. 17.  Plaintiff's tender was Defendant's first notice
22  of the Stage plaintiffs' lawsuit.  Def's SUF No. 7.
23  Around fifty days after the tender, Defendant denied
24  that it owed benefits to Plaintiff under the insurance
25  policy.  Pl.'s SUF No. 18.  Defendant had a copy of the
26  Stage plaintiffs' complaint prior to denying Plaintiff
27  insurance benefits.  Id. No. 19.  Before denying
28  Plaintiff insurance benefits, Defendant also had a copy

of SCE's cross-complaint against Plaintiff and Plaintiff's cross-complaint against CTC. <u>Id.</u> Nos. 20-21.

### 5. Defendant's Claim Investigation

During its investigation of Plaintiff's tender, Defendant considered that CTC may have been hired to perform temporary traffic controls at the Stage plaintiffs' accident intersection. <u>Id.</u> No. 22. Defendant also considered an email from a CTC employee stating that CTC worked about 200 feet north of the accident intersection. <u>Id.</u> No. 23. Defendant also considered a file note stating that the "Insd did work in intersection . . . Clmts filed suit and GC has now filed 3rd party against the insured." <u>Id.</u> No. 24. Defendant also considered a file note which read that the "facts are not clear" and that further information was needed to discover if CTC was at all responsible for the Stage plaintiffs' accident. <u>Id.</u> No. 25. Defendant also considered a CTC accident report, that may have shown that CTC worked 1,000 feet from the accident intersection and was not working during Stage plaintiffs' accident. <u>See generally</u> Morales Decl., Ex. N. Lastly, Defendant considered a statement from CTC's operation manager that CTC had provided temporary traffic controls at the accident intersection. <u>See generally</u> Morales Decl., Ex. L.

### 6. Defendant's Denial of Coverage

Defendant responded to Plaintiff's tender by

denying it owed Plaintiff coverage, asserting that CTC
was not determined to be negligent, and asserting that
CTC worked in a limited manner and far away from where
Stage plaintiffs' accident occurred.  Pl.'s SUF No. 27.
About four months after Defendant refused to defend
Plaintiff, Plaintiff dismissed its cross-complaint
against CTC.  See generally Def's Req. for Judicial
Notice ("Def's RJN"), Ex. 1, ECF No. 22-3.  In 2019,
Plaintiff filed a new cross-complaint against CTC.
Def's SUF No. 17.

      7.  Plaintiff's Second Tender

      On May 22, 2019, Plaintiff again tendered defense
and indemnity to Defendant and cited witness testimony.
Pl.'s SUF No. 28.  The witness testimony Plaintiff cited
to asserted that CTC had the authority to modify the
traffic control plan in effect on the night of the
accident.  Id.  The testimony further included a traffic
safety expert that asserted that CTC's scope of work
included the accident intersection.  Id.  After
consulting with the California Manual on Uniform Traffic
Control Devices, the expert also asserted that CTC fell
below the standard of care at the worksite.  Id.
Defendant had copies in its files of the witness
testimony at the time of the 2019 tender.  Id. No. 29.
Defendant never responded to Plaintiff's 2019 tender.
Id. No. 30.

      8.  CTC's Duty to Defend

      In 2019, CTC filed a motion in the Stage

plaintiffs' action that as a matter of law CTC did not owe or breach a duty of care. Id. No. 31. The superior court denied CTC's motion and determined that evidence established a dispute of whether CTC's scope of work included the accident intersection. Id. No. 32. In the superior court's 2020 order, the court granted a motion for summary adjudication that CTC had a duty to defend Plaintiff based on the potential that CTC's scope of traffic control work included the accident intersection. Id. No. 34. Defendant was informed of the superior court's order no later than December 7, 2020. Id. No. 36. Defendant knew of the superior court's 2020 order and did not provide policy benefits to Plaintiff. Id. No. 38. In 2021, Plaintiff demanded that Defendant pay Plaintiff's $1,000,000 policy limit to protect Plaintiff against a judgment in the Stage plaintiffs' lawsuit. Id. No. 40.

    9.   Plaintiff's Settlement with Stage plaintiffs

    Plaintiff settled with the Stage plaintiffs in exchange for Plaintiff paying them $1,670,000. Id. No. 42. Plaintiff had an insurance policy with Zurich that offered $2,000,000 with a $2,000,000 deductible. See Draper Decl. at 134-138, Ex. V, ECF No. 21-5. In total in the Stage plaintiffs' litigation, Plaintiff has paid $1,996,542.46 for its defense and indemnity. See Draper Decl. at 226, 234, Ex. Y.

**B.   Procedural Background**

    On September 8, 2021, Plaintiff filed its Complaint

[1].  On September 2, 2022, Plaintiff filed the instant Motion [21].  On September 13, 2022, Defendant opposed [22].  On September 20, 2022, Plaintiff replied [23].

## II.  DISCUSSION

### A.  <u>Legal Standard</u>

#### 1.  <u>Summary Judgment</u>

Federal Rule of Civil Procedure 56(a) states that a "court shall grant summary judgment" when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine" issue exists if the evidence is such that a reasonable fact-finder could return a verdict for the nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the nonmovant.  <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1328-29 (9th Cir. 1983).  In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists.  <u>Anderson</u>, 477 U.S. at 255.

Where the nonmovant bears the burden of proof at trial, the movant need only prove that there is no evidence to support the nonmovant's case.  <u>In re Oracle Corp. Secs. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010).  If the movant satisfies this burden, the burden then

shifts to the nonmovant to produce admissible evidence showing a triable issue of fact.  Id.; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000); see also Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

    2.   Partial Summary Judgment

    Federal Rule of Civil Procedure 56 authorizes courts to grant partial summary judgment to limit the issues to be tried in a case.  State Farm Fire & Cas. Co. v. Geary, 699 F. Supp. 756, 759 (N.D. Cal. 1987) (citing Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981)); see, e.g., White v. Lee, 227 F.3d 1214, 1240 (9th Cir. 2000) ("[A] court may award a partial summary judgment that decides only [the] issue [of liability].").  Absent special circumstances, partial summary judgment is not appealable prior to the entry of a final judgment because such orders do not dispose of all claims or end the litigation on the merits.  Williamson v. UNUM Life Ins. Co. of Am., 160 F.3d 1247, 1250 (9th Cir. 1998)(citations omitted).

**B.   Analysis**

    Plaintiff moves for partial summary judgment on four issues: 1) as of September 8, 2017, Defendant owed a duty to defend Plaintiff in an underlying personal injury action; 2) Defendant still owed Plaintiff a duty to defend at the time of a May 14, 2021 settlement in the personal injury action; 3) Defendant breached its

1   insurance contract by not defending Plaintiff; and 4)

2   Defendant's breach of the insurance contract was a

3   breach of its duty of good faith and fair dealing.  Mot.

4   at 1:1-10.  Before reaching the merits of the instant

5   Motion, the Court first addresses Plaintiff's and

6   Defendant's requests for judicial notice and evidentiary

7   objections.

8         1.   Preliminary Matters

9              a.   *Requests for Judicial Notice*

10                  i.   *Plaintiff's RJN*

11        Plaintiff asks the Court to judicially notice six

12   documents filed in the Stage plaintiffs' lawsuit: (1) an

13   amendment to the Stage plaintiffs' complaint filed in a

14   Superior Court for the County of Los Angeles; (2) the

15   Stage plaintiffs' complaint filed in a Superior Court

16   for the County of Los Angeles; (3) Plaintiff's cross-

17   complaint against CTC filed in a Superior Court for the

18   County of Los Angeles; (4) SCE's cross-complaint filed

19   in a Superior Court for the County of Los Angeles; (5)

20   an order filed in a Superior Court for the County of Los

21   Angeles; and (6) another order filed in a Superior Court

22   for the County of Los Angeles.  See generally Pl.'s RJN.

23   A district court may take judicial notice under Rule 201

24   of "undisputed matters of public record . . . including

25   documents on file in federal or state courts."  Harris

26   v. Cnty. of Orange, 682 F.3d 1126, 1131-32 (9th Cir.

27   2012).  Here, the documents Plaintiff request the Court

28   judicially notice are on file with federal or state

courts, and the documents have a direct relation to the matters at issue in this case because each of the documents were filed in the underlying Stage plaintiffs' action upon which this case is premised.  See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (citations omitted) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").  Furthermore, Defendant does not oppose Plaintiff's requests for judicial notice.  See generally Opp'n.  As such, the Court **GRANTS** Plaintiff's six requests for judicial notice.

> ii. *Defendant's RJN*

Defendant requests the Court judicially notice two documents filed in the Stage plaintiffs' lawsuit: (1) Plaintiff's request to dismiss CTC from the Stage plaintiffs' lawsuit in 2018; and (2) Plaintiff's request to dismiss CTC from the Stage plaintiffs' lawsuit in 2022.  See generally Def's RJN.  Here, both documents Defendant request the Court judicially notice are on file with federal or state courts, and the documents have a direct relation to the matters at issue in this case because each of the documents was filed in the underlying Stage plaintiffs' action upon which this case is premised.  See United States ex rel. Robinson Rancheria Citizens Council, 971 F.2d 248.  Furthermore,

11

Plaintiff does not oppose Defendant's requests for judicial notice.  See generally Reply.  As such, the Court **GRANTS** Defendant's two requests for judicial notice.

    b.  *Evidentiary Objections*

Plaintiff objects to an excerpt of Defendant's Ryan Declaration.  See Pl.'s Evid. Objs., ECF No. 23-3. Defendant objects to four excerpts of Plaintiff's Draper Declaration.  See Def's Evid. Objs., ECF No. 22-2.  The Court has considered the admissibility of the evidence and has not considered facts that are irrelevant or that could not be in a form that would be admissible at trial.  See Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010).  The Court does not rely on these excerpts in its analysis, and thus the Court **DENIES as MOOT** Plaintiffs' evidentiary objection as well as **DENIES as MOOT** Defendant's evidentiary objections.

    2.  Plaintiff's Motion for Summary Judgment

When parties sign a duty to defend insurance contract, an "insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 295 (1993).  The "duty to defend is so broad that it only requires 'a bare potential or possibility of coverage as the trigger of a defense duty.'" Nat'l Union Fire Ins. Co. v. Seagate Techs., Inc., 466 F. App'x 653, 655 (9th Cir. 2012) (quoting Montrose, 6 Cal. 4th at 300).

Here, Defendant's insurance policy with Plaintiff provides that: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against 'any suit' seeking those damages."  Morales Decl., Ex. G at 81.  The insurance applied to "bodily injury" only if the injury was caused by an "occurrence" that took place in the "coverage territory" and the injury occurred during the policy period.  Id.  Plaintiff was identified as insured under the policy with respect to bodily injuries caused in whole or in part by CTC in the performance of CTC's ongoing operations for Plaintiff.  Pl.'s SUF No. 6. Plaintiff is asserting in this Action that Defendant owed Plaintiff a duty to defend when Plaintiff was a defendant in the Stage plaintiffs' action.  See Mot. at 1:28-2:7.

Here, it is undisputed that the Stage plaintiffs' injuries would constitute "bodily injury" and that the injuries occurred during the policy period.  Id. at 2:12-13; see Opp'n at 4:5-17.  The parties dispute whether the "occurrence" in this case involves acts or omissions of CTC and a breach of CTC's duty of care. See generally Mot.; Opp'n.  Plaintiff is entitled to a defense, in part based off whether CTC was responsible for the Stage plaintiffs' injuries.  See generally Morales Decl., Ex. G, ECF No. 21-4.  Given the policy

1  language, Defendant's defense duty is triggered if at

2  the time of the 2017 tender there was a bare potential

3  or possibility of coverage.  See Montrose, 6 Cal. 4th at

4  300.  Coverage is determined by an inspection of the

5  claims in the Stage plaintiffs' action and the outside

6  facts Defendant knows at the time of tender.  See El-Com

7  Hardware v. Fireman's Fund Ins. Co., 92 Cal. App. 4th

8  205, 212 (2001).

9       The duty to defend exists based upon facts "known

10  by the insurer at the inception of a third party

11  lawsuit." Montrose, 6 Cal. 4th at 295; see Gunderson v.

12  Fire Ins. Exch., 37 Cal. App. 4th 1106, 1114 (1995)

13  (holding that potential coverage is determined "at the

14  time of tender").  The court determines the duty to

15  defend by "comparing the allegations of the third party

16  complaint with the terms of the policy." El-Com

17  Hardware, 92 Cal. App. 4th at 212.  Facts the insurer

18  knows outside the complaint "at the inception of the

19  third party lawsuit may also give rise to a duty to

20  defend when they reveal a possibility the policy may

21  cover the claim." Id.  Extrinsic facts known to the

22  insurer can on their own generate a duty to defend. Id.

23  at 213.

24       At the time of the first tender, Defendant had a

25  copy of the Stage plaintiffs' complaint as well as a

26  cross-complaint filed against CTC.  Pl.'s SUF Nos. 19-

27  21.  The Stage plaintiffs' complaint had added Plaintiff

28  as a DOE defendant and asserted that all the defendants

in the action were liable due in part to the accident intersection lacking "cones, blockage, signage, or warnings to drivers."  Pl.'s RJN, Ex. B-1.  CTC was hired to provide traffic control on the night of the accident, and it was unclear the scope of CTC's worksite.  See generally Morales Decl., Exs. M-N. Plaintiff asserted in its tender that CTC was working at the "subject property" referenced in the Stage plaintiffs' complaint.  See generally Morales Decl., Ex. I.  The above is part, but not all the information Defendant had at the time of tender showing a possibility that CTC was partly responsible for the Stage plaintiffs' accident.  See Pulte Home Corp. v. Am. Safety Indem. Co., 14 Cal. App. 5th 1086, 1124 (2017) (holding that a lower court is allowed to draw reasonable conclusions based on the evidence that an insurer was primarily looking out for its own interests rather than the interests of its additional insureds).

There is a duty to defend when facts reveal a possibility that the claim may be covered by the terms of the insurance policy.  Gunderson, 37 Cal. App. 4th at 1113-14.  Even if the precise causes of action pled by the third party complaint fall outside the policy coverage, the duty to defend still exists if the complaint could be fairly and reasonably amended to state a covered liability claim.  Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 654 (2005).

At the time of the September 2017 tender, Defendant was aware that: (1) CTC may have been hired to perform temporary traffic controls at the Stage plaintiffs' accident intersection; (2) a CTC employee stated that CTC worked about 200 feet north of the accident intersection; (3) a file note stated that the "Insd did work in intersection . . . Clmts filed suit and GC has now filed 3rd party against the insured;" (4) another file note read that the "facts are not clear" and that Defendant could not rule out CTC's liability; and (5) a CTC's operation manager made a statement that CTC had provided temporary traffic controls at the accident intersection. See Pl.'s SUF Nos 22-25; Morales Decl., Ex. L. Given that Defendant knew that CTC was providing traffic control near or at the accident intersection, and that the Stage plaintiffs' complaint alleged a lack of traffic control as a reason for the accident, Defendant could not rule out the possibility that CTC was partly responsible for the Stage plaintiffs' accident.

The duty to defend does not arise if both the third-party complaint and extrinsic facts cannot indicate any basis for potential coverage. Scottsdale Ins., 36 Cal. 4th at 655. To prevail on a motion for summary judgment, the "insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential." Montrose, 6 Cal. 4th at 300. "In other words, the insured need

only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." Id. When "there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer." Hudson Ins. Co. v. Colony Ins. Co., 624 F.3d 1264, 1267 (9th Cir. 2010).

Defendant argues that it considered a CTC accident report which possibly showed that CTC worked 1,000 feet from the accident intersection and was not working during Stage plaintiffs' accident. See generally Morales Decl., Ex. N. Defendant further argues that CTC was not named in the Stage plaintiffs' complaint at the time of the original 2017 tender. Pl.'s RJN, Ex. B-1. However, neither of these facts create a genuine dispute of whether Defendant owed a duty to defend Plaintiff. To create a genuine dispute regarding the duty to defend, a reasonable jury must be able to find based off the facts and law that Defendant eliminated all possibility of coverage. In other words, Defendant must show that CTC could not have been even partly at fault for the Stage plaintiffs' accident. Even though arguably certain facts weaken the potential for coverage, other facts support the potential for coverage such as CTC work zone and the allegations in the Stage plaintiffs' complaint. See Mirpad, LLC v. Cal. Ins. Guarantee Ass'n, 132 Cal. App. 4th 1058, 1068 (2005) ("If coverage depends on an unresolved dispute over a factual question, the very existence of that

dispute would establish a possibility of coverage and thus a duty to defend."). Here, the conflicting facts of CTC's scope of work support a finding of coverage and thus a duty to defend.[2]

a.  *As of September 8, 2017, Defendant Owed a Duty to Defend Plaintiff in the Stage Plaintiffs' Action*

The allegations in the initial Stage plaintiffs' complaint and the facts known to Defendant during the initial tender in September 2017, indicated at least "a bare potential or possibility" that Plaintiff was an insured because CTC was liable for the Stage plaintiffs' accident. Montrose, 6 Cal. 4th at 300. Viewing the facts in the light most favorable to Defendant, Plaintiff has proven the existence of a potential for coverage. "[T]he record taken as a whole could not lead a rational trier of fact to find" that there was no potential for coverage on the date of the initial tender. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). The Court concludes that Plaintiff is entitled to summary judgment on the issue that Defendant had a duty

_____

[2] Defendant further argues that a 2020 superior court order stated that CTC did not owe Plaintiff a defense as of the September 2017 tender because Plaintiff dismissed and then filed a new cross-complaint against CTC. See generally Pl.'s RJN, Ex. B-5. Plaintiff's dismissal of its cross-complaint occurred after Plaintiff had tendered to CTC. Pl.'s SUF No. 17. Furthermore, Plaintiff's tender and dismissal of its cross-complaint against CTC is not a dismissal of its request for defense as to Defendant. Plaintiff never withdrew its September 2017 tender of defense to Defendant. See generally Opp'n.

to defend Plaintiff in the Stage plaintiffs' action from the date of the initial tender on September 8, 2017.

> b.  *As of the May 14, 2021 Settlement, Defendant Owed a Duty to Defend Plaintiff in the Stage Plaintiffs' Action*[3]

The duty to defend extends until the underlying lawsuit concludes or until the insurer establishes the absence of any potential for coverage. El-Com Hardware, 92 Cal. App. 4th at 213.  An insured entitled to a duty to defend is entitled to an immediate full protection of defense on its behalf. Montrose, 6 Cal. 4th at 295; see Buss v. Super Ct., 16 Cal. 4th 35, 49 (1997) ("To defend meaningfully, the insurer must defend immediately.  To defend immediately, it must defend entirely." (citation omitted)).

Defendant gained more information regarding CTC's potential liability up until the time of the Stage plaintiffs' settlement in May 2021. See generally Pl.'s RJN, Ex. B-4; Morales Decl., Ex. P; Pl.'s RJN, Ex. B-5. For example, Defendant was aware of two court orders regarding CTC's fault in the Stage plaintiffs' lawsuit. The first order regarded a motion for summary adjudication, in which the court denied a motion by CTC because CTC could not eliminate the possibility of its

---

[3] Given that both the first and second issue involve an insurance company's duty to defend an insured, the same laws regarding the duty to defend as discussed for the Motion's first issue apply to the Motion's second issue.

fault in the Stage plaintiffs' action.  Pl.'s RJN, Ex. B-4.  The superior court's second order held that CTC owed a duty to defend Plaintiff based off the MSA contract, because CTC could not eliminate its potential for fault in the Stage plaintiffs' action.  Pl.'s RJN, Ex. B-5.  Given that CTC's potential for fault or liability triggers Defendant's duty to defend Plaintiff, the two superior court orders give the Defendant more extrinsic facts outside the Stage plaintiffs' complaint that would trigger a duty to defend Plaintiff.[4]

Most importantly, given that Defendant's duty to defend was triggered at the 2017 tender and nothing excused its duty, Defendant's duty to defend was still active at the time of the May 14, 2021 settlement. Throughout the lawsuit, Defendant was aware there was a possibility that CTC was at fault for the Stage plaintiffs' accident.  Therefore, the Court concludes that Plaintiff is entitled to summary judgment on the issue that Defendant had a duty to defend Plaintiff in the Stage plaintiffs' lawsuit as of the May 14, 2021 settlement.

    c.  *Defendant Breached Its Insurance Contract by Not Defending Plaintiff*

A refusal to defend may simply be a breach of the

---

[4] After Plaintiff's first tender, CTC was added as a DOE defendant in the Stage plaintiffs' lawsuit.  Pl.'s RJN, Ex. A. Defendant offered assistance and defense to CTC in the Stage plaintiffs' lawsuit, which increased Defendant's knowledge of CTC's potential fault.  Ryan Decl. ¶ 5., ECF No. 22-6.

insurance contract.  Cont'l Cas. Co. v. Royal Ins. Co., 219 Cal. App. 3d 111, 124 n.6 (1990).  Even though one insurer may owe a duty to defend, a second insurer is not excused from honoring its separate and independent contractual obligation to defend the insured.  Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp., 130 Cal. App. 4th 1078, 1088 (2005).  "Breach of an insurer's duty to defend violates a contractual obligation and, where unreasonable, also violates the covenant of good faith and fair dealing, for which tort remedies are appropriate."  Amato v. Mercury Cas. Co., 53 Cal. App. 4th 825, 831 (1997).

While Plaintiff tendered defense to Defendant multiple times in the Stage plaintiffs' lawsuit, Defendant either denied, ignored, or failed to fully comply with Plaintiff's tenders.  Pl.'s SUF Nos. 17, 28, 40.  When a duty to defend is triggered, a complete and full defense must be given to the insured.  See Risely v. Interinsurance Exch. of the Auto. Club, 183 Cal. App. 4th 196, 210 (2010).  Regardless of Plaintiff's insurance coverage with Zurich, Defendant agreed to insure Plaintiff on a primary and non-contributory basis.  Pl.'s SUF No. 8.  Therefore, Defendant could not deny Plaintiff coverage even if Plaintiff had other insurance.  In 2021, Plaintiff demanded that Defendant pay Plaintiff's $1,000,000 policy limit to protect Plaintiff against a judgment in the Stage plaintiffs' lawsuit.  Id. No. 40.  Defendant rejected Plaintiff's

demand, and Plaintiff paid $1,996,542.46 for its defense
and indemnity.  See Draper Decl. at 226, 234, Ex. Y.
Given that after Plaintiff's multiple tenders Defendant
has not offered a full defense to Plaintiff, Defendant
has breached its duty to defend.[5]

Given that Defendant's duty to defend Plaintiff
arose in 2017 after Plaintiff tendered defense to
Defendant, Defendant has breached its obligations to
Plaintiff by not defending Plaintiff in the Stage
plaintiffs' lawsuit.  Therefore, the Court concludes
that Plaintiff is entitled to summary judgment on the
issue that Defendant breached the insurance contract by
improperly denying Plaintiff benefits.

> d.  *Defendant's Breach of the Insurance*
> *Contract Was a Breach of Its Duty of*
> *Good Faith and Fair Dealing*

There is an implied covenant of good faith and
fair dealing in every insurance policy contract that
"neither party will do anything which will injure the

---

[5] Defendant argues that it had defended Plaintiff by
defending CTC in the Stage plaintiff's action.  Opp'n at 7:9-12.
However, Plaintiff is an additional insured, and a defense to CTC
does not satisfy a defense obligation owed to Plaintiff.  "An
'additional insured' endorsement creates a contractual obligation
that is entirely separate and apart from any indemnification
obligation that may exist in an underlying construction
contract."  Am. Cas. Co. v. Gen. Star Indem. Co., 125 Cal. App.
4th 1510, 1527-28 (2005).  "Absent explicit contrary language . .
. enforcement of the coverage promise under the 'additional
insured' clause will not be precluded by the absence of a
contractual indemnification obligation."  Id.  Therefore, CTC
negotiated payment of Plaintiff's defense fees in accordance with
the scope of the superior court's 2020 order does not satisfy
Defendant's defense duty to Plaintiff.  Def's SUF No. 25.

right of the other to receive the benefits of the agreement." Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973).  To establish a breach of the implied covenant of good faith and fair dealing, the plaintiff must show that the insurer withheld policy benefits unreasonably and without proper cause.  Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151 (1990).

The insurer has a duty to investigate the tendered claims thoroughly and cannot deny coverage based on unduly restrictive policy interpretations.  Id. at 1148.  The insurer cannot ignore evidence which supports the claim and focus solely on those facts which justify the denial of the claim.  Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 721 (2007).  An insurer has breached the covenant of good faith and fair dealing if it unreasonably fails to defend.  Campbell v. Superior Court, 44 Cal. App. 4th 1308, 1319 (1996).

The insurer cannot favor one insured's interests over another.  Lehto v. Allstate Ins. Co., 31 Cal. App. 4th 60, 72 (1994).  An insurer settling in favor of an insured and leaving another insured without coverage, breaches the duty of good faith and fair dealing. Strauss v. Farmers Ins. Exch., 26 Cal. App. 4th 1017, 1021 (1994).

To breach the duty of good faith and fair dealing, the insurer must engage in conduct beyond negligence, rising to the level of a conscious and deliberate act which frustrates the agreed upon purpose

of the contract.  <u>Nieto v. Blue Shield of Cal. Life & Health Ins. Co.</u>, 181 Cal. App. 4th 60, 86 (2010).  The ultimate test of bad faith is seeing whether the insurer's refusal to pay benefits was unreasonable. <u>Chateau Chamberay Homeowners Ass'n v. Associated Internat. Ins. Co.</u>, 90 Cal. App. 4th 335, 346 (2001). "While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence."  <u>Id.</u>

Here, the undisputed facts show that Defendant had a duty to defend Plaintiff in the Stage plaintiffs' lawsuit.  The facts alleged in the complaint and facts known to Defendant at the time of the first tender showed that CTC could be liable for the Stage plaintiffs' accident.  The initial Stage plaintiffs' complaint alleged that the accident was caused in part by a lack of warnings, signage, cones, and blockage. CTC oversaw traffic control, which would include the things mentioned above.  Pl.'s RJN, Ex. B-1.

By the time of the May 14, 2021 settlement, Defendant was aware of two court orders which could not eliminate CTC's duty to defend Plaintiff or liability in the Stage plaintiffs' lawsuit.  These orders are strong evidence that CTC was potentially at fault and that Defendant could not eliminate the potential for coverage.  Given Defendant's lack of participation in

1    Plaintiff's defense, Defendant has breached its duty of
2    good faith and fair dealing.  Defendant rejected the
3    repeated tenders despite its knowledge of the facts and
4    circumstances of the Stage plaintiffs' accident and the
5    orders of the superior court.

6         Viewing the facts in the light most favorable to
7    Defendant, no reasonable jury could conclude that
8    Defendant's failure to provide a defense in the Stage
9    plaintiffs' action was reasonable.  The only reasonable
10   inference that can be drawn from the evidence is that
11   Defendant's conduct was unreasonable.  See Skanska
12   United States Civil W. Cal. Dist. v. Nat'l Interstate
13   Ins. Co., 551 F. Supp. 3d 1010, 1030-31 (S.D. Cal. 2021)
14   (granting an insured's motion for partial summary
15   judgment and finding that an insurance company's failure
16   to defend an additional insured was unreasonable and a
17   breach of its covenant of good faith and fair dealing).
18   Therefore, the Court concludes that Plaintiff is
19   entitled to summary judgment on the issue that
20   Defendant's breach of the insurance contract was
21   unreasonable and a breach of Defendant's duty of good
22   faith and fair dealing.

23                    **III.   CONCLUSION**

24        Based on the foregoing, because there are no
25   disputes of fact concerning Defendant's duty to defend,
26   Defendant's breach of the insurance contract, and
27   Defendant's breach of the duty of good faith and fair
28   dealing, partial summary judgment is proper.  Therefore,

1  the Court **GRANTS** Plaintiff's Motion for Partial Summary

2  Judgment.

3

4  **IT IS SO ORDERED.**

5

6  DATED: November 14, 2022      /s/Ronald S.W. Lew

7                                **HONORABLE RONALD S.W. LEW**
                                Senior U.S. District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28